# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**DAMON CAMEL (#364623)**                                    **CIVIL ACTION**

**VERSUS**

**BURL CAIN, ET AL.**                                        **NO. 13-339-SDD-RLB**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on September 2, 2016.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

DAMON CAMEL (#364623)                                   CIVIL ACTION

VERSUS

BURL CAIN, ET AL.                                       NO. 13-339-SDD-RLB

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court in connection with the petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The petitioner, Damon Camel, challenges his conviction, entered in 2004 in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana, on one count of armed robbery and one count of first degree robbery.  The petitioner contends that he was provided with ineffective assistance of counsel due to (1) an alleged systemic denial of the right to effective assistance of counsel, (2) the failure of his trial counsel to file a motion to suppress his identification, (3) the failure of his trial counsel to file a motion to sever the charged offenses, (4) the failure of his trial counsel to subpoena Freddie Camel, (5) the failure of his trial counsel to object to the district attorney's statement (or request a limiting instruction) that the jury could consider the evidence of both offenses together, (6) the failure of his trial counsel to object to the district attorney's reference to his failure to testify, (7) the failure of his appellate counsel to assert as an error on appeal the trial court's denial of a motion for mistrial, and (8) the failure of his trial counsel to object to the district attorney's voluntary dismissal of two counts of being a felon in possession of a firearm.

1

I.      **Factual Background**

The facts, as taken from the decision of the Louisiana First Circuit Court of Appeal, are

as follows:

Early on May 31, 2003, Raymond Billups drove his cousin, Odis Lee Martin, Jr. to the
City Nights nightclub in Martin's vehicle.  Martin exited the vehicle on the passenger's
side.  While Billups had the vehicle's driver's side door open to speak with a friend, a man
approached him and asked if he and Martin were rappers.  Billups noticed the man had a
"scar" over his eye.  Billups answered the question negatively, and the man went away.
Approximately three or four minutes later, the man returned and implied that they were
rappers, and wanted to hear Billups's and Martin's CD.  Billups told the man that neither
he nor Martin had a CD.  In an effort to get rid of the man, Billups also told the man that
the car was "running hot."  The man asked Billups to start the car.  The man went away,
but returned approximately three or four minutes later with an accomplice who had his
face covered with a blue bandanna and braided hair.  The man placed a gun to Billups's
head.  Billups described the weapon as "a black semi-automatic."  The man stated, "Get
out car (sic), big boy[.]  Don't do nothing stupid, you know."  The accomplice pointed a
revolver at Martin and then got into the car.  Billups got out of the car, and the man and
his accomplice drove away in the vehicle.  Billups reported the robbery to the police and
gave them a description of the robber.  He described the robber as 5' 9" to 6' tall, with a
low bald fade haircut, and a "cut" over his eye.  Billups indicated he knew the robber's
eye was disfigured.  The parking lot was lit by large overhead lights and lights from a
Hancock Fabric store.  Billups indicated he had no trouble seeing in the parking lot and
saw the robber for at least a minute.  He identified the defendant in court as the robber
and had no doubt in his identification.  Martin testified the robbery occurred at
approximately 5:00 a.m., and the robber stole his 1985 Chevrolet Caprice.  The vehicle
had 20" Dayton rims and a Panasonic CD player.  The rims cost between $1200 and
$1300.

At approximately 8:10 a.m. that same day, the vehicle was discovered at 4866
Bank Street.

On June 6, 2003, a man grabbed Reginald Demond Tackno from behind as
Tackno exited the home of a female friend.  The man put an object, which felt like a gun
to Tackno's head, pulled him from the porch, and demanded his car keys.  Tackno
surrendered his car keys, and the robber told him to walk off and not to look back.  As the
robber drove off in Tackno's vehicle, Tackno noticed the robber was "kind of bright" and
had a scar on his face.  Tackno went to look for his car with his cousin.  Tackno asked
different people if they had seen the car.  One of the people Tackno spoke to told him that
the car had been pulled behind a house located on Bank Street, which he pointed out to
Tackno.  Tackno provided the police with the information.  Tackno testified the robber
stole his 1985 Pontiac Bonneville.  The vehicle had 20" Dayton rims and a Pioneer stereo
system.

Baton Rouge City Police Officer Patrick Caldwell responded to Tackno's report of an armed robbery at approximately midnight.  At approximately 4:00 a.m., Tackno advised the police that he had found his vehicle and directed them to 4760 Bank Street.  Tackno's vehicle was behind the residence.  The vehicle was partially jacked up and was partially covered with a tarp.  There were tools, lug wrenches, and other items lying around the vehicle.  The police tried to make contact with someone inside the house.  They banged on the door for approximately an hour before the door was opened.

Baton Rouge Police Department Sergeant Rudy Babin also responded to the Bank Street address on the morning of the Tackno robbery.  The home was within three miles of the location where Tackno had been robbed.  The defendant and a female eventually responded to the police banging on the door.  The defendant was advised of his *Miranda* rights, and the defendant indicated when asked, that he was the owner of the house.  Sergeant Babin advised the defendant of the stolen, partially stripped vehicle in his backyard and asked the defendant to accompany her to the rear of the house.  The defendant acted very surprised to see the vehicle.  He claimed he did not know how the vehicle got behind his house and claimed it had not been there when he went to sleep.  The defendant consented to a search of his home.  Tackno's car stereo was discovered in the west bedroom of the home.

Thereafter, the defendant indicated he wanted to put on a shirt, and Officer Caldwell escorted him to his bedroom.  After the defendant threw around some clothes, Officer Caldwell saw something in the defendant's hand.  The object was a set of car keys and a remote control to a car alarm.  The remote control activated the car alarm of Tackno's vehicle.  Thereafter, the police recovered the remote control to Tackno's car stereo from the front right pocket of the defendant's pants.  Subsequently, fingerprints matching those of the defendant were recovered from Tackno's vehicle.

On June 10, 2003, due to similarities between the Billups/Martin and Tackno robberies, and due to similarities in the descriptions of the robber, Baton Rouge City Police Officer Tillmon Cox presented to Billups a six-photograph line-up, which included a photograph of the defendant.  Billups selected the defendant's picture as that of the robber in approximately two seconds.  He was one hundred percent certain of the identification.

The State also introduced the defendant's booking photograph and sheet into evidence.  The sheet depicts a light-skinned black male, 6' tall, with a missing right eye.

*State v. Camel*, 949 So.2d 676, 2007 WL 466764 (La. App. 1st Cir. 2007).

## II.    Procedural History

Petitioner was charged by bill of information with two counts of armed robbery (Counts I

and III), violations of La. R.S. 14:64, and two counts of possession of a firearm by a convicted

felon (Counts II and IV), violations of La. R.S. 14:95.1, and pled not guilty.  A jury trial was conducted in November, 2004.  After the close of the prosecution's case and prior to the jury's deliberation, the State realized that it had neglected to enter into the record an agreed stipulation that the petitioner had a prior conviction.  Accordingly, the State voluntarily dismissed the two pending counts of possession of a firearm by a convicted felon.   The jury thereafter deliberated and found the petitioner guilty as charged on Count I and guilty of the responsive offense of first degree robbery, a violation of La. R.S. 14:64.1, on Count III.  As to Count I, the trial court sentenced the petitioner to fifteen years at hard labor without the benefit of probation, parole, or suspension of sentence.  As to Count III, the court sentenced him to ten years at hard labor.  The court ordered the sentences imposed on Counts I and III to run concurrently with each other, but consecutively to any other sentence the defendant might be serving.  Thereafter, in connection with Count I, the State filed a habitual offender bill of information against the petitioner. Following a hearing on April 19, 2005, the petitioner was adjudged a second felony habitual offender, the previously imposed sentence on Count I was vacated, and he was sentenced on Count I to fifty years at hard labor, without the benefit of probation, parole, or suspension of sentence.

On December 20, 2005, the petitioner filed an application for post-conviction relief ("PCR") seeking an out-of-time appeal.  The trial court granted the petitioner's motion for an out-of-time appeal on April 7, 2006 and appointed the Louisiana Appellate Project to represent the petitioner on appeal.  On August 4, 2006, the petitioner perfected the appeal, asserting insufficiency of the evidence as his sole assignment of error.  The petitioner's conviction, habitual offender adjudication, and sentence on Count I, and the conviction and sentence on Count III were thereafter affirmed by the Louisiana First Circuit Court of Appeal on February

14, 2007.  *See State v. Camel, supra*.  The Louisiana Supreme Court thereafter denied the petitioner's application for supervisory review on December 14, 2007.  *See State v. Camel*, 970 So.2d 526 (La. 2007).

On May 6, 2008, the petitioner filed a second application for post-conviction relief asserting claims (2) through (8) as set forth above.  After delays in the trial court for the filing of supplemental briefs, the trial court denied the petitioner's PCR application on May 15, 2012. The petitioner thereafter applied for supervisory review before the Louisiana appellate court, which courts denied review, with the Louisiana Supreme Court denying the petitioner's application on January 25, 2013.  *See State ex. rel. Camel v. State,* 105 So.3d  716 (La. 2013).

The instant application for a writ of habeas corpus was filed on or about May 27, 2013. The State argues that the petitioner's application before this Court is subject to dismissal in its entirety as being a "mixed" petition because Claim No. 1 in the petitioner's federal habeas corpus application was not exhausted in the state courts.  The State alternatively asserts that a deferential review of the state court proceedings and findings, as mandated by 28 U.S.C. § 2254(d) and (e), compels the conclusion that all of the petitioner's claims must be rejected.

The Court will first address the petitioner's Claims Nos. 2 through 8 and will address the petitioner's Claim No. 1 at the conclusion of this Report.

III.    **Legal Discussion/Standard of Review**

The standard of review in this Court is that set forth in 28 U.S.C. § 2254(d).  Pursuant to that statute, an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a

decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Relief is authorized if a state court has arrived at a conclusion contrary to that reached by the Supreme Court on a question of law or if the state court has decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Relief is also available if the state court has identified the correct legal principle but has unreasonably applied that principle to the facts of the petitioner's case or has reached a decision based on an unreasonable factual determination. *See Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). Mere error by the state court or mere disagreement on the part of this Court with the state court determination is not enough; the standard is one of objective reasonableness. *Id. See also Williams v. Taylor*, *supra*, 529 U.S. at 409 ("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable"). State court determinations of underlying factual issues are presumed to be correct, and the petitioner has the burden to rebut that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A habeas petitioner who asserts that he was provided with ineffective assistance of counsel must affirmatively demonstrate (1) that his counsel's performance was "deficient," *i.e.*, that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment, and (2) that the deficient performance prejudiced his defense, *i.e.*, that counsel's errors were so serious as to deprive the petitioner of a fair trial, a trial in which the result is reliable. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The petitioner must make both showings in order to obtain habeas relief based upon the alleged ineffective assistance of counsel. *Id*.

To satisfy the deficiency prong of the *Strickland* standard, the petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards. *See,* e.g.*, Martin v. McCotter*, 796 F.2d 813, 816 (5th Cir. 1986). The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence and that, under the circumstances, the challenged action might be considered sound trial strategy. *See,* e.g., *Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988). This Court, therefore, must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial. *Martin v. McCotter, supra*, 796 F.2d at 817. Great deference is given to counsel's exercise of professional judgment. *Bridge v. Lynaugh, supra*, 838 F.2d at 773; *Martin v. McCotter, supra*, 796 F.2d at 816.

If the petitioner satisfies the first prong of the *Strickland* test, his petition nonetheless must affirmatively demonstrate prejudice resulting from the alleged errors. *Earvin v. Lynaugh*, 860 F.2d 623, 627 (5th Cir. 1988). To satisfy the prejudice prong of the *Strickland* test, it is not sufficient for the petitioner to show that the alleged errors had some conceivable effect on the outcome of the proceeding. *Strickland v. Washington, supra*, 466 U.S. at 693. Rather, the petitioner must show a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. *Martin v. McCotter, supra*, 796 F.2d at 816. The habeas petitioner need not show that his counsel's alleged errors "more likely than not" altered the outcome of the case; he must instead show a probability that the errors are "sufficient to undermine confidence in the outcome." *Id*. at 816-17. Both the *Strickland* standard for ineffective assistance of counsel and the standard for federal habeas review of state court decisions under 28 U.S.C. § 2254(d)(1) are highly deferential, and when the two apply in

7

tandem, the review by federal courts is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

The above showing is one that the petitioner cannot make in the instant case.

**Claim No. 2:  Failure To File A Motion To Suppress Identification**

In Claim No. 2 of his federal habeas application, the petitioner asserts that his trial counsel was ineffective for failing to file a motion to suppress the identification of the petitioner by Raymond Billups as being one of the perpetrators of the armed robbery listed in Count I of the Information, *i.e.,* the Billups/Martin robbery on May 31, 2003.  The petitioner asserts that the photographic line-up that was presented to Billups in June, 2003, and that resulted in the witness' identification of the petitioner as the perpetrator of that offense, was overly suggestive inasmuch as the petitioner's photograph was the only one in the line-up that depicted a person with something wrong with his right eye.  The petitioner further asserts that the identification was unreliable due to discrepancies in the witnesses' testimony.  He points to the fact that Raymond Billups testified that the parking lot where the robbery took place was well lit and allowed for a definitive identification of the petitioner, while another witness, Odis Martin, was unable to identify the petitioner and described the lighting as "dim."  The petitioner further points out that the witnesses described the perpetrator as having a scar on the right side of his face whereas he asserts that, instead of a scar, he only has a glass right eye.  The petitioner complains that based upon these factors, his attorney should have filed a motion to suppress Billups' photographic lineup identification of the petitioner, and it was defective performance not to have done so.

The Court does not agree with the petitioner's contention and concludes that there is no legal or factual basis for the exclusion of the referenced identification.  The United States Supreme Court has stated that "reliability is the linchpin in determining the admissibility of

identification testimony" under the Due Process Clause.  *Manson v. Brathwaite*, 432 U.S. 98,

114 (1977).  *See also United States v. Moody*, 564 F.3d 754, 762 (5th Cir. 2009).  A two-step

procedure is utilized in evaluating such testimony, asking "first whether the identification

procedure was impermissibly suggestive and second, whether the procedure posed a 'very

substantial likelihood of irreparable misidentification.'" *United States v. Rogers*, 126 F.3d 655,

658 (5th Cir. 1997).  "If the answer to both questions is yes, the identification is not admissible."

*Id.*  The five factors utilized in evaluating the likelihood of misidentification are "the opportunity

of the witness to view the criminal at the time of the crime, the witness' degree of attention, the

accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by

the witness at the confrontation, and the length of time between the crime and the confrontation."

*Neil v. Biggers*, 409 U.S. 188, 199 (1972).  Further, the availability of cross-examination

"exposes to the jury the method's potential for error" and substantially lessens the risk of

misidentification.  *Simmons v. United States*, 390 U.S. 377, 384 (1968).

  In reviewing the petitioner's post-conviction relief application in the instant case, the

state court Commissioner identified the appropriate two-part *Brathwaite* test, and it also

acknowledged the five factors pertinent to the court's analysis of this claim.  The Commission

then applied those factors to the identification at issue, stating the following:

> The record shows that Billups testified that the area of the robbery was well lit, and that
> the perpetrator came up to him and spoke to him directly on several occasions before he
> returned with a gun.  After the robbery, he told Detective Cox that the robber had a
> disfigured right eye – a description that is consistent with the Petitioner's facial features.
> Cox testified that the photographic lineup contained other individuals with a similar
> appearance to the Petitioner, but that he was not able to find anyone else with a disfigured
> right eye.  On cross-examination Cox acknowledged that only three of the six photos in
> the line-up had disfigurements or scars on their eye, and only one of the six photos
> depicted an individual having something wrong with the right eye.  When shown the
> lineup, Billups immediately picked the Petitioner's photograph from the line-up.  Billups
> testified that he was absolutely certain that the person that approached him the first two
> times was the same as the person that approached him on the third time…. Thus, even

considering the fact that no one else in the photo lineup had a glass eye, with the Victim's description of adequate lighting, the fact that the robber spoke to him directly on several occasions before returning with a gun and the fact that he described the assailant as having a disfigured right eye, … there is no substantial likelihood of misidentification in this case, such that a motion to suppress, if filed, would likely have been granted…. [G]iven the record itself, it seems apparent that the victim was certain of the identification based on his opportunity to view the robber under circumstances that would allow a reliable identification.  Even Odis Martin, the passenger who described the lighting as dim, also testified that he was, in fact, able to the see the faces of people he was talking to as well, but he was not talking to the Petitioner….

*See* Commissioner's Report at pp. 5-6.  Thus, in reviewing the petitioner's PCR application, the trial court reasonably applied the factors articulated in *Brathwaite* and properly determined that the identification procedure used in the petitioner's case, even if suggestive, did not lead to a substantial likelihood of misidentification.   Accordingly, because the photo identification in this case was not improperly obtained, the petitioner's trial counsel did not act deficiently in failing to file a motion to suppress that identification.  Further, even if the petitioner's trial counsel arguably should have filed such a motion, the petitioner is unable to show that he was prejudiced by the failure to do so because, as stated above, there is no reasonable probability that the petitioner would have succeeded in connection therewith.  As such, the petitioner was not prejudiced by his counsel's failure to file a motion to suppress, and the state trial court's conclusion in that regard was correct.  Accordingly, in accordance with clearly established federal law, this claim should be rejected.

### Claim No. 3:  Failure To File A Motion To Sever The Offenses

The petitioner asserts in Claim No. 3 that his attorney should have moved to sever the trials of the two robberies.  In support of this claim, the petitioner asserts that he was confounded by being tried before a jury with both offenses at once, because he would have testified in his own defense in connection with the Tackno robbery that occurred on June 6, 2003, and would have explained why Tackno's vehicle was found in his back yard.  The petitioner asserts that his

testimony would have been that he received a telephone call on that date from his uncle, Freddy Camel, advising that somebody wished to sell a vehicle with chrome rims and a good stereo system for $1,500. The petitioner allegedly would have testified that he immediately gave the seller, who has never been identified, a partial payment of $1,200 and then began to remove from the car items that he wanted. Later that night when the police arrived, the petitioner realized that it was likely that he had purchased a stolen car, so he was initially dishonest with the police about the vehicle being in his yard because he was concerned that he would be charged with possession of stolen property. The petitioner asserts that he could have presented this testimony to the jury in connection with a trial on the Tackno robbery but that he could not do so when both offenses were tried together because of the similarity between the vehicles stolen during the Tackno and Billups/Martin robberies, both of which were 1985 models and both of which had been equipped with chrome rims and expensive stereo systems. According to the petitioner, this similarity would have been prejudicial because it would have suggested to the jury that he was interested in obtaining cars of that type and configuration.

As pointed out by the state court Commissioner, a significant problem with the petitioner's contention in this regard is that he has never asserted that he advised his attorney of his wish to testify in connection with the Tackno robbery or ever requested that his attorney file a motion to sever the two robbery offenses for this reason. In the absence of information communicated by the petitioner that he wished to testify in connection with one of the offenses and not the other, the petitioner's attorney could not reasonably have anticipated the need to pursue that course of action. Further, and more importantly, the petitioner is unable to show that he was prejudiced by his attorney's failure to file a motion to sever the offenses because he cannot show a likelihood that such a motion would have been granted.

To merit habeas relief on a claim of misjoinder of offenses, a petitioner must prove that his trial was rendered fundamentally unfair. *Alvarez. v. Wainwright*, 607 F.2d 683, 685 (5th Cir. 1979). The decision whether to grant a severance of offenses is "within the sound discretion of the trial court and is required only in cases of compelling prejudice." *Breeland v. Blackburn*, 786 F.2d 1239, 1241 (5th Cir. 1986). Furthermore, the burden of proving prejudice is a heavy one and a trial judge's decision on whether or not to grant a severance will rarely be disturbed by a reviewing court. *Id*.

Here, several provisions of the Louisiana Code of Criminal Procedure control whether the Bill of Information properly joined the multiple offenses. First, La. Code Crim. P. art. 493 provides that "[t]wo or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged … are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan …." Further, La. Code Crim. P. art. 495.1 provides for a severance of joined offenses under certain circumstances, stating that "[i]f it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires." Notwithstanding, the Louisiana courts have concluded that "there is no prejudice and severance is not required if the facts of each offense are not complex, and there is little likelihood the jury will be confused by the evidence of more than one crime." *See State v. Lewis*, 557 So.2d 980, 984 (La. App. 4th Cir. 1990), *writ denied*, 578 So.2d 922 (La. 1991).

In the instant case, it appears clear that the two robberies that occurred a week apart and were alike in several respects were sufficiently similar to allow for them to be tried together and

were not so complex as to result in a likelihood of confusion.  *See, e.g., McGee v. Cain*, 2007 WL 4591227, *11 (E.D. La. Dec. 26, 2007) (concluding that charges of multiple counts of "armed robbery, attempted armed robbery, and purse snatching" were appropriately tried together).  The petitioner contends, however, that he was prejudiced by the joinder because he was effectively prevented from testifying on his own behalf in connection with the Tackno robbery.  Notwithstanding, a "[s]everance is not mandatory simply because a defendant indicates that he wishes to testify on some counts but not others.  Rather, '(s)everance for this reason, as for any other, remains in the sound discretion of the trial court.'"  *Alvarez v. Wainwright, supra*, 607 F.2d at 685, *quoting United States v. Williamson*, 482 F.2d 508, 512 (5th Cir. 1973).  In *Alvarez, supra*, the defendant had failed to articulate at the trial court level any precise reason why he would be prejudiced by a single trial of all the charges, why he did not want to testify on one of the charges, or what testimony he would have offered.  In upholding the trial court's denial of a severance, the *Alvarez* court quoted with approval the decision of the District of Columbia circuit in *Baker v. United States*, 401 F.2d 958 (D.C. Cir. 1968):

> [N]o need for a severance exists until the defendant makes a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other.  In making such a showing, it is essential that the defendant present enough information regarding the nature of the testimony he wishes to give on one count and his reason for not wishing to testify on the other to satisfy the court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of "economy and expedition in administration" against the defendant's interest in having a free choice with respect to testifying.

*Id*. at 977.

In the instant case, despite the petitioner's current assertion that he wished to explain to the jury how he purchased the Tackno vehicle, there is no assertion that he ever advised his attorney of his wish to do so or even that he informed his trial counsel that he had allegedly purchased the vehicle from an unnamed third party on the night of the robbery.  Even had the

13

petitioner done so, and even had his attorney filed a motion to sever the offenses for this reason, there is little likelihood that the motion would have been granted.  Specifically, the petitioner has failed to make a genuine and convincing showing that he had both important testimony to give concerning the one count and a strong need to refrain from testifying in the other.   The investigating police officials testified at trial that the petitioner provided two different and inconsistent explanations as to how the car came to be in his yard, neither of which involved his having purchased it.  When initially confronted by police, the petitioner acted surprised and stated that he did not know how the car came to be in his yard because it had not been there when he went to sleep.  Notwithstanding, the car's stereo and the remotes to the stereo and the car's security system were found in the petitioner's possession, and at some point later, the petitioner told the police, without corroboration, that the car had been stolen by a cousin of Tackno.   It is inconceivable that the trial court, had it been informed of the petitioner's desire to present a third inconsistent version to the jury, would have found the petitioner's rationale genuine and convincing so as to warrant a severance of the robbery offences.  Accordingly, the petitioner has failed to show either deficient conduct on the part of his attorney or prejudice resulting therefrom, and this claim should also be rejected.

### Claim No. 4:  Failure To Subpoena Freddie Camel

In Claim No. 4, the petitioner asserts that his counsel was ineffective for failing to subpoena his uncle, Freddie Camel, to testify at trial.  The petitioner asserts that on several occasions he reminded his trial counsel to subpoena Freddie Camel to ensure his presence.  The petitioner asserts that Freddie Camel possessed first-hand knowledge of critical facts relative to the petitioner's alleged purchase of the Tackno vehicle as set forth above, and would have

14

testified that the petitioner was not the person who committed the armed robbery but, instead, unknowingly purchased the vehicle from someone else.

Complaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of the content of a prospective witness' testimony are largely speculative. *Gregory v. Thaler,* 601 F.3d 347, 352–353 (5th Cir. 2010) *citing Harrison v. Quarterman,* 496 F.3d 419, 428 (5th Cir. 2007). To prevail on a claim based upon uncalled witnesses, a petitioner must name the witness, demonstrate that the witness would have testified, set out the content of the witness' proposed testimony, and show that the testimony would have been favorable. *Id.* Claims of uncalled witnesses remain disfavored, however, especially if the claim is unsupported by evidence indicating the witness' willingness to testify and the substance of the proposed testimony. "Ordinarily, a defendant's failure to present some evidence from the uncalled witness ... would be fatal to an ineffective assistance of counsel claim." *Harrison v. Quarterman, supra*, 496 F.3d at 428. *See also Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). "[W]ithout a specific, affirmative showing of what the missing evidence or testimony would have been, a habeas court cannot even begin to apply *Strickland* 's standards because it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any deficiencies in counsel's performance." *Anderson v. Collins,* 18 F.3d 1208, 1221 (5th Cir. 1994). Moreover, where the only evidence of a missing witness's purported testimony is provided by the petitioner, courts view such claims with great caution. *Sayre v. Anderson,* 238 F.3d 631, 636 (5th Cir. 2001). Thus, "[a] prisoner's bald conclusory assertion that … [favorable] witnesses were not called does not serve to 'overcome the strong presumption that his counsel's actions were reasonable.'" *Id.*

In the instant case, the petitioner has provided only his conclusory assertions regarding the testimony that would have been provided by Freddie Camel. He has not presented this Court with an affidavit from the proposed witness or otherwise shown, by competent evidence, what Freddie Camel's testimony would have been or that it would have been favorable to the petitioner. In contrast to the petitioner's statement to the police that he and Freddie Camel had been at a nightclub earlier in the evening and his assertion to this Court that Freddie Camel facilitated the petitioner's purchase of the Tackno vehicle, Freddie Camel apparently stated to the police during the investigations that he had not gone anywhere with the petitioner that evening and had no knowledge regarding the robbery or the vehicle in the petitioner's yard. See Narrative Area of Police Report relative to the Tackno robbery. Thus, under the circumstances, the state court's conclusion that the petitioner failed to support this claim of ineffective assistance was entirely reasonable and supportable.

### Claim No. 5:  Failure To Object To District Attorney's Statement During Closing Or Request A Limiting Jury Instruction

The petitioner next asserts that his trial counsel was ineffective for failing to object (or request a limiting instruction) when the District Attorney stated during closing arguments that the jury could consider evidence of one crime as corroborating the petitioner's involvement in the other. In this regard, the prosecutor stated as follows during closing arguments:

> Now, I want to talk about the relationship between the two counts. What did they have in common? Do they corroborate each other? Does the fact that these happened within a week of each other, does the fact that in both of these cases a 1985 vehicle with 20-inch Dayton rims was involved, does the fact that they both had really nice stereo systems …. Does the fact that Raymond Billups tells you that's the man and describes him as having a bad eye and the fact that Mr. Tackno, although he was very, very hesitant to even try to I.D. the defendant, describes him with a scar, do you think that that corroborates somewhat? Absolutely. Do you think that the manner in which the crimes were committed indicates that they were committed by the same person? Absolutely…. Does this corroborate? Does this indicate to you that the same person was involved in each of these crimes? Yes it does. Can you consider that? Is that valid evidence? Yeah, it

16

certainly is…. Both of these I'd feel totally comfortable with them on their own but what makes the case so strong and overwhelming, makes your decision so easy, is that they corroborate each other, and you get to consider that as well.

        *        *        *        *

The State submits to you don't get confused on this. You can consider the first armed robbery count and you can find him guilty with it all by itself. You can consider the second armed robbery count, and you can find him guilty of it all by itself, but don't forget, you get to consider them together, you get to do that because there are facts and circumstances that indicate that they are connected….

Trial Transcript at pp. 219-21 and 236-37.

In addressing this claim, the state court Commissioner concluded that any error by the district attorney in making the aforementioned statements constituted harmless error. As pointed out by the Commissioner, the evidence presented in connection with each offense was simple and distinguishable and was presented in an orderly fashion. Additionally, the trial court delineated between each charged offense and provided a separate verdict form as to each. Notably, the jury did not reach the same verdict as to each charge and found the petitioner guilty of the lesser crime of first degree robbery in connection with the Tackno robbery.

In light of the foregoing, the petitioner cannot show that he was prejudiced by his trial counsel's failure to object to the district attorney's comments or request a limiting instruction. The evidence of guilt in this case was strong, with Billups clearly identifying the petitioner as the robber and with the Tackno vehicle being located in the petitioner's yard, covered and on jacks, shortly after commission of the offense. In addition, the trial court notes that the petitioner's trial counsel correctly informed the jury that each crime was to be considered on its own evidence and merits. Given the overwhelming evidence of guilt in connection with each count, it is unlikely that the outcome of the proceeding would have been different had trial counsel objected to the prosecution's comments or requested a limiting instruction. Accordingly, the Court finds no

17

error in the determination of the state court Commissioner that any error in this context was

harmless and so not a basis for federal habeas relief.

**Claim No. 6:  Failure To Object Following The
Prosecution's Reference To The Petitioner's Failure To Testify**

In Claim No. 6, the petitioner asserts that his trial counsel was ineffective for failing to

object or request a mistrial when the district attorney "continuously declared to Mr. Camel's jury

that they should use against him his failure to explain how the car got into the driveway of his

residence."  R. Doc. 15 at p. 22.  The petitioner contends that the district attorney, in doing so,

improperly commented upon the petitioner's failure to testify at trial.  In this regard, the

Constitution prohibits the State from commenting upon an accused's exercise of his Fifth

Amendment right to remain silent at trial.  *Griffin v. California,* 380 U.S. 609, 615 (1965).

Notwithstanding, the law is clear that the prosecution is not constitutionally prohibited from

commenting on the defense's failure to counter or explain the evidence, as opposed to the

defendant's failure to testify.  *United States v. Grosz,* 76 F.3d 1318, 1326 (5th Cir. 1996), *citing*

*United States v. Guzman,* 781 F.2d 428, 432 (5th Cir. 1986), and *United States v. Bright,* 630

F.2d 804, 825 (5th Cir. 1980).  Stated differently, the State "may call to the jury's attention the

fact that the defense did not rebut evidence offered by the State."  *Jackson v. Johnson,* 194 F.3d

641, 652 (5th Cir. 1999).  Accordingly, if the comments made by the prosecution were

constitutionally permissible, there was no sound basis for the petitioner's counsel to have

objected thereto.

The test for determining whether a prosecutor's remarks are constitutionally

impermissible is, "(1) whether the prosecutor's manifest intent was to comment on the

defendant's silence or (2) whether the character of the remark was such that the jury would

naturally and necessarily construe it as a comment on the defendant's silence."  *United States v.*

18

*Grosz, supra* 76 F.3d at 1326, *quoting United States v. Collins*, 972 F.2d 1385, 1406 (5th Cir. 1992) (quotations marks omitted).  As to the first inquiry, the prosecutor's intent is not interpreted as being manifestly to impermissibly comment on the petitioner's failure to testify if there is some other, equally plausible explanation for the remarks.  *Id.  See also Jackson v. Johnson, supra,* 194 F.3d at 652.  For the second inquiry, "the question is not whether the jury might or probably would view the challenged remark in this manner, but whether it necessarily would have done so."  *Id.*

      In the instant case, as noted by the state court Commissioner, the district attorney's argument to the jury was as follows:

> [W]e have this circumstantial evidence…. [L]et's talk about the statement that he made. What was his statement to Sergeant Babin when he was questioning about, you know, "There's been an armed robbery, there's a car in your backyard."  "What car?  What car? What are you talking about?  I don't know about any car."  Does that show guilty knowledge?  Absolutely.  And the whole time he's saying that he's got the remote and the keys in his hand or on his person.  He's got the remote to the stereo in his pants pocket, and he's saying, "What car?  What are you talking about?"  He didn't have to make a statement to police.  He could have remained silent.  He didn't have to say a word, but he chose to, and what he did was choose to lie to police.  If he had an explanation for having the car, he could have told police at that moment what the purpose was, but he didn't."
>
> Then he was advised of his rights again, and he elected to make another statement. Again, he could have told the police whatever he needed to tell them, whatever he needed to explain, but what does he say?  Reginald Tackno's cousin robbed him, and Reginald's trying to protect his cousin, except that he never said what his cousin's name was.  He never said that he knew Reginald, how he knew that Reginald's cousin robbed him, nothing.  Again, it's just another lie, and because it's just another lie do you get to use that against him?  Absolutely, you get to use that against him, and you should use it against him.  If there was an explanation, could he have made it?  Yes.  There's no explanation.

Trial Transcript at pp. 218-19.  It appears clear that the foregoing constitutes a recitation by the prosecution and a commentary, not upon the petitioner's decision not to testify at trial, but upon his statements made to police after he was provided with *Miranda* warnings and after he elected

not to exercise his right to remain silent.  In this regard, the failure of an attorney to object to proceedings or testimony at trial may not be seen to constitute deficient representation unless there is a sound basis for the objection.  *Emery v. Johnson,* 139 F.3d 191, 198 (5th Cir. 1997).  Stated differently, a futile or "meritless objection cannot be grounds for a finding of deficient performance."  *Id.*  In the context of this case, the remarks challenged by the petitioner were clearly focusing on the petitioner's statements to the police.  As such, the comments were not a constitutionally impermissible comment on the petitioner's decision not to testify.  Under these circumstances, the state court Commissioner reasonably concluded that there was a plausible and permissible explanation for the prosecution's comment and/or that the jury did not necessarily view the statements as a comment on the petitioner's silence at trial.  *Jackson v. Johnson, supra,* 194 F.3d at 652–653.  As such, the remarks were not constitutionally impermissible, and the petitioner's trial counsel was not deficient for failing to lodge a futile objection.

Finally, the petitioner has shown no reasonable probability that, but for the failure to object, the result of trial would have been different.  As previously noted, and reiterated by the state court Commissioner in reviewing the petitioner's PCR application, the cumulative effect of the evidence found in the petitioner's yard, in his home and on his person, together with his lies to the police, provided more than a sufficient basis to support the verdict.  Trial counsel's failure to object to the district attorney's closing argument does not therefore undermine confidence in the verdict.  Further, the trial court explained in its instructions to the jury that "[t]he defendant is not required to call any witnesses or to produce any evidence," that "[t]he defendant is not required to testify," and that "[n]o presumption of guilt and no inference of any kind may be drawn from the fact that the defendant did not testify."  *See* Jury Instructions at p. 8.  Consequently, the Court finds that the petitioner has not carried his burden to affirmatively show

that he was prejudiced by the failure to object or request a limiting instruction in response to the alleged indirect comment on his silence.  This claim, therefore, is without merit and should be rejected.

### Claim No. 7:  Failure To Challenge On Appeal
### The Denial Of A Motion For Mistrial In The Trial Court

The petitioner asserts in Claim No. 7 that his appellate counsel was deficient for failing to challenge on appeal the trial court's denial of a motion for mistrial after a witness testified that the petitioner was in jail when he was arrested on one of the counts of armed robbery. Following a testimonial statement to this effect by Detective Tillmon Cox, the petitioner's trial counsel moved for a mistrial, which was denied by the trial court.

As a general rule, a criminal defendant may be prejudiced before a jury by references to prior arrests or convictions and, as a result, evidence or testimony that a defendant was in confinement at any particular time is generally disallowed.  However, when a witness provides such testimony without prior warning (as opposed to the prosecution or court, *see* La. Code Crim. P. art. 771), the denial of a motion for a mistrial under these circumstances is a matter of discretion in the state trial court, and the courts in Louisiana have made clear that a mistrial "should be granted only where the prejudicial remarks of the witness make it impossible for the defendant to obtain a fair trial."  *State v. Johnson*, 951 So.2d 294 (La. App. 1ˢᵗ Cir. 2006).  In the instant case, when Detective Cox made the referenced statement, the jury had already heard evidence regarding the earlier identification and arrest of the petitioner as the perpetrator of one of the counts of armed robbery offenses.  Thus, it was not unduly prejudicial for the jury to then hear that the petitioner was in custody when evidence came to light shortly thereafter and he was arrested in connection with the other offense.  The statement by Detective Cox therefore, was not "so pronounced and persistent that it permeate[d] the entire atmosphere of the trial and cast

serious doubt upon the correctness of the jury's verdict." *United States v. Wallace,* 32 F.3d 921, 926 (5th Cir. 1994) (citations and internal quotation marks omitted).  *See also State v. Givens*, 776 So.2d 443 (La. 2001), where the Louisiana Supreme Court found no error in the denial of a mistrial despite a police officer's impermissible reference to an unrelated rape that had been severed from the charges at trial, noting that "[t]he defendant was on trial for two counts of rape, and the comment could have been construed as referring to those two rape counts."

With respect to claims of ineffective assistance by appellate counsel, the Fifth Circuit Court of Appeals has noted that to prevail, a petitioner must make the same *Strickland* showing of both deficient conduct and actual prejudice, and the Court has further stated:

> Prejudice results if the attorney's deficient performance would likely render either the defendant's trial fundamentally unfair or the conviction and sentence unreliable.  Where an attorney failed to adequately brief an issue on direct appeal, appellant must show initially that the appeal would have had, with reasonable probability, a different outcome if the attorney adequately addressed the issue.  "This requires that we counter-factually determine the probable outcome on appeal…."  Appellant must then demonstrate that the attorney's deficient performance led to a fundamentally unfair and reliable result.

*United States v. Dovalina*, 262 F.3d 472, 474 (5th Cir. 2001) (citations omitted).  It is also universally recognized that "[c]ounsel is not required to urge on appeal every nonfrivolous ground that might be raised.  It is not only reasonable but effective for counsel on appeal to winnow out weaker arguments and focus on a few key issues."  *Mayo v. Lynaugh*, 882 F.2d 134, 139 (5th Cir. 1989), *modified on other grounds*, 893 F.2d 683 (5th Cir. 1990).

In the instant case, the state court Commissioner concluded that the denial of the motion for a mistrial was not an abuse of discretion by the trial judge.  In so concluding, the Commissioner noted, as pointed out above, that when Detective Cox testified regarding having gone to the jail to arrest the petitioner, the jury had already heard evidence regarding the petitioner's arrest a day or so previously on the other count of armed robbery.

> Detective Caldwell and Sergeant Babin testified that the Petitioner was arrested on June 10-11, 2003, after Reginald Tackno's vehicle was located in the Petitioner's backyard. Detective Tillmon Cox testified that he noticed similarities in the Tackno robbery and the earlier robbery of Billups/Martin.  Cox testified that on June 12, 2003, the day after Billups identified the Petitioner from a photographic lineup, Cox arrested the Petitioner who was already in the parish prison.

Commissioner's Report at p. 16.  This Court similarly finds that there is no basis for concluding that the petitioner was prejudiced by the reference to his being in confinement at the time of his arrest by Detective Cox, and there is no basis for concluding that the appellate court would have found the denial of a mistrial under these circumstances to be an abuse of discretion. Considering the foregoing, any claim by the petitioner's appellate attorney that the trial court erred in denying the motion for mistrial would have been found to be meritless, and the petitioner's claim of ineffective assistance of appellate counsel in this regard should be rejected.

### Claim No. 8:  Failure To Object To The District Attorney's Voluntary Dismissal Of Two Counts Of Felon In Possession Of A Firearm

In Claim No. 8, the petitioner asserts that his trial counsel was ineffective for failing to object when the district attorney voluntarily dismissed the two pending counts of being a felon in possession of a firearm (Counts II and IV).  This claim is clearly without merit.  The record reflects that the dismissal of these Counts came about because, although the State and the petitioner agreed to stipulate shortly before the conclusion of trial that the petitioner had a prior felony conviction, the district attorney then inadvertently neglected to present the stipulation to the jury before the prosecution rested.  Thus, although the evidence, in the form of the referenced stipulation, was available relative to these two counts, the omission of the district attorney caused there to be insufficient evidence before the jury as to a critical element relative thereto, and the prosecution was then constrained to omit any closing argument as to these counts and to advise the jury that these counts were no longer before it.  There is no suggestion in the record that the

referenced omission was intentional or that there was any bad faith in connection therewith. Thus, this is not a situation where the prosecution, in bad faith, has included a charge for the purpose of getting prejudicial evidence before the jury that it otherwise would have been unable to introduce, and has then dismissed the charge after achieving that purpose.  The state court Commissioner further noted that the petitioner was not prejudiced by the voluntary dismissal. Specifically, because of the district attorney's omission, the petitioner avoided potentially longer additional sentences on the felon-in-possession counts, and there was more-than-sufficient evidence of the petitioner's guilt in connection with the robbery charges, thereby supporting a conclusion that any reference to the petitioner's prior felony conviction during the opening statements was harmless.   Accordingly, the Court does not find error in the state court's rejection of this claim, and this claim should likewise be rejected herein.

### Claim No. 1:  Systemic Denial of Effective Assistance Of Counsel

Finally, returning to a consideration of Claim No. 1, the petitioner asserts in connection with this claim that the Louisiana government fosters systemic ineffective assistance of counsel due primarily to inadequate funding and a lack of independence resulting from undue political interference.[1]  The petitioner cites the alleged deficiencies of his trial and appellate counsel as set forth above in Claims Nos. 2 through 8 as the basis for his Claim No. 1, as well as a reference to articles and findings outlined in a Louisiana Indigent Defense Evaluation entitled "An Assessment of Trial-level Indigent Defense Services in Louisiana 40 Years after *Gideon*.'"  *See* R. Doc. 15 at p. 4.  The petitioner further contends that there is an inherent conflict of interest

---

[1]         Considering that the petitioner asserts that he presented this claim in a supplemental memorandum in connection with his PCR application before the state court and that the court neglected to substantively address it, the Court will, for purposes of completeness, consider this claim to have been presented to the state courts for purposes of the exhaustion requirement of 28 U.S.C. § 2254.

created by the systemic deficiencies of indigent defender counsel and the failure of the state

judicial system to honor its obligation to recognize these systemic deficiencies.  In making this

claim regarding systemic deficiencies, the petitioner is essentially seeking to bring his claim

within that category of cases where prejudice is presumed and need not be established by the

petitioner.

   The petitioner's claim in this regard must be rejected.  In *Sterling v. Dretke*, 100 Fed.

Appx. 239 (5th Cir. 2004), the Fifth Circuit addressed the difference between trial errors and

systemic deficiencies in the context of claims of ineffective assistance of counsel, stating:

> In cases of trial error, such errors are subject on habeas review to harmless error analysis
> under *Brecht v. Abrahamson*, 507 U.S. 619 … (1993), which permits relief in federal
> habeas only upon a showing that a particular constitutional error had a "substantial and
> injurious effect or influence in determining the jury's verdict."  Trial error occurs during
> the presentation of the case to the jury and is amenable to harmless error analysis because
> it can be "quantitatively assessed in the context of other evidence presented."  In cases of
> trial error, a petitioner must explain how "specific errors of counsel undermined the
> reliability of the finding of guilt."  However, at the other end of the spectrum lie systemic
> or structural errors that warrant automatic reversal, such as complete denial of counsel,
> denial of counsel at a critical stage of the criminal proceedings, or if counsel fails to
> subject the state's case to meaningful adversarial testing.  This type of constitutional error
> requires automatic reversal without a showing of harm; that is, prejudice is presumed.

*Id*. at 246.  *See also Clark v. Dretke*, 2006 WL 1529542, *3 (E.D. Tex. June 1, 2006).  In the

instant case, the Court is unable to conclude that the petitioner has shown such systemic

deficiencies in the provision of indigent counsel that entitled him to relief in connection with this

claim without a showing of prejudice.  The petitioner is not entitled to error-free counsel or to the

best attorney that may be available.  In the instant case, the petitioner's attorney "was more than

a warm body occupying a chair at the counsel table …."  *See Washington v. Strickland*, 673 F.2d

879, 901 (5th Cir. 1982) (finding that, given the nature of the petitioner's claims of ineffective

assistance, "he must show that his case was prejudiced by [his attorney's] alleged failings").

Specifically, the petitioner's attorney apparently consulted with and advised his client, made

some strategic decisions, succeeded in excluding some unfavorable evidence, and argued persuasively, if unsuccessfully, that the petitioner should be acquitted.   As noted above, the petitioner was found guilty of a lesser included offense in connection with Count III of the Bill of Information and avoided findings of guilt altogether in connection with Counts II and IV.   As such, the Court finds that the petitioner is not entitled to a finding of systemic deficiencies in the provision of counsel in this case and is therefore required to make the requisite showing of prejudice as to the specific asserted deficiencies complained of herein.   *See Burton v. Terrell*, 2007 WL 2480468, *5 n. 2 (W.D. La. July 19, 2007) (finding that the petitioner's claims of ineffective assistance of counsel "based on various 'systemic' deficiencies in the … Public Defender's Office must be analyzed under the same standard as his specific claim of ineffective assistance of counsel," thus requiring a showing of both deficient performance and prejudice). Thus, inasmuch as the Court has found the petitioner's identifiable claims to be without merit, delineated as Claims Nos. 2 through 8, above, the Court must further conclude that Claim No. 1 is also without merit and should be rejected.

### Certificate of Appealability

Should the petitioner pursue an appeal, a certificate of appealability should also be denied.  An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Although the petitioner has not yet filed a Notice of Appeal herein, the Court may address whether he would be entitled to a certificate of appealability.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).  A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  In cases where the Court has rejected a petitioner's constitutional claims on

26

substantive grounds, a petitioner must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005), *quoting Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In the instant case, the Court finds that reasonable jurists would not debate the denial of the petitioner's § 2254 application or the correctness of the substantive ruling.  Accordingly, it is appropriate that, in the event that the petitioner seeks to pursue an appeal in this case, a certificate of appealability should be denied.

## **RECOMMENDATION**

It is recommended that the petitioner's application for habeas corpus relief be dismissed, with prejudice, as lacking merit.  It is further recommended that, in the event that the petitioner seeks to pursue an appeal, a certificate of appealability be denied.

Signed in Baton Rouge, Louisiana, on September 2, 2016.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**